1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KEVIN BARTHOLOMEW,                         No.  2:13-cv-1500 GEB DB P

12                  Plaintiff,

13         v.                                    ORDER AND

14    A. V. SOLORZANO,                           FINDINGS AND RECOMMENDATIONS

15                  Defendant.

16

17         Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights

18    action pursuant to 42 U.S.C. § 1983. This matter proceeds on plaintiff's original complaint

19    against defendant A.V. Solorzano on a First Amendment retaliation claim. This matter is before

20    the undersigned on plaintiff's motion for summary judgment, which defendant opposes. For the

21    reasons set forth below, the undersigned will recommend that plaintiff's motion for summary

22    judgment be denied.

23    A.     **Plaintiff's Allegations**

24         In the complaint, plaintiff alleges that defendant Solorzano retaliated against him because

25    plaintiff submitted a report alleging that he was sexually harassed by defendant. According to

26    plaintiff, Solorzano's acts of retaliation against him include: (1) refusing to allow plaintiff to

27    shower on September 8, 2011, and from September 11 to September 13, 2011; (2) denying

28    plaintiff's request for a "Bed/move" on September 19, 2011; and (3) carrying out a "punitive"

search of plaintiff's cell on March 19, 2012, during which the defendant broke plaintiff's

dentures.

**II.      Relevant Procedural Background**

Plaintiff initiated this action on July 25, 2013. His complaint was screened on March 24,

2014, and found to state a cognizable First Amendment retaliation claim against defendant. (ECF

No. 10.) Service was ordered on May 5, 2014, and defendant filed an answer on August 20, 2014.

Pursuant to the August 29, 2014, Discovery and Scheduling Order ("DSO"), the discovery

deadline was December 12, 2014, and the dispositive motion deadline was May 5, 2014. (ECF

No. 21.) This DSO was subsequently modified to continue the dispositive motion deadline to

November 30, 2015. (ECF No. 27.)

On August 31, 2015, plaintiff filed the instant motion for summary judgment. (ECF No.

28.) Defendant filed an opposition on November 30, 2015, and plaintiff filed a reply on

December 21, 2015. (ECF Nos. 35, 39.)

Plaintiff has also filed a "motion to bifurcate defendant's opposition." (ECF No. 32.)

Therein, plaintiff seeks to prevent defendant from filing a cross-motion for summary judgment on

the ground that it would unfairly prejudice plaintiff. This motion will be denied because

defendant has not filed a cross-motion for summary judgment and the time for filing one has now

passed.

**III.     Facts**

At all times relevant to this action, plaintiff was a prisoner housed in Building 8 at the

California State Prison in Solano, California ("CSP-Solano"). Pl.'s Statement of Undisputed Facts

in Supp. Mot. Summ. J. ("PSUF") ¶ 4. Defendant was employed at CSP-Solano as a correctional

officer who was assigned to Building 8 as a First Tier Officer. Id. ¶ 5.

**A.      The September 1, 2011, Incident**

On September 1, 2011, there was an incident involving plaintiff and defendant during the

processing of plaintiff's legal mail. PSUF ¶ 8. Plaintiff claims defendant sexually harassed him,

PSUF ¶ 11, though defendant denies that any misconduct occurred, Decl. of A.V. Solorzano in

Supp. of Opp'n to MSJ (ECF No. 35-3) ¶ 2.

The following day, plaintiff filed a grievance regarding the incident.  Plaintiff then personally served the defendant with the grievance. PSUF ¶ 11; Pl.'s Reply at 2. On November 21, 2011, plaintiff's grievance was partially granted at the second level of review after a confidential investigation of the incident revealed no wrongdoing. PSUF ¶ 14. On March 30, 2012, plaintiff's grievance was denied at the third level of review, and the findings at the second level of review were upheld. Id. ¶ 19.

**B.      The September 8 and 11-13, 2011, Showers Denials**

Defendant did not allow plaintiff to shower on September 8, 2011, PSUF ¶ 22, and between September 11 and 13, 2011, id. ¶ 25.

Plaintiff's version of the September 8, 2011, shower denial is as follows: Earlier that day, defendant asked plaintiff whether "we could resolve the [sexual harassment] issue without filing paperwork," but plaintiff refused to withdraw his appeal. Pl.'s Decl. in Supp. of Pl.'s MSJ (ECF No. 28 at 27-31) ¶¶ 12-13.  Later, when plaintiff asked for a shower following his return from work, defendant said, "You write me up and expect a shower, lock it up." PSUF ¶ 22; Decl. of Willie Grant in Supp. of Pl.'s MSJ (ECF No. 28 at 19) ¶ 5.

Defendant denies having made the above statements. Def.'s Decl. ¶¶ 2-3. He also denies having refused plaintiff a shower in retaliation for the grievance, asserting that he was not even aware of the grievance until he was interviewed for the investigation on October 26, 2011. Id. ¶ 2. Though defendant does not remember speaking to plaintiff about the shower on September 8, 2011, he claims there are two legitimate reasons why he would have denied a shower to plaintiff at that time: first, if the inmates were on a modified program or lockdown, or second, if plaintiff did not have permission to shower because he had already recently showered that day or had refused a shower earlier that day. Id. ¶ 3.

**C.      The September 19, 2011, Request for a Convenience Bed Move**

On September 19, 2011, plaintiff submitted a request for a convenience bed move to have an inmate in another building move into his cell. PSUF ¶ 27.

Plaintiff claims defendant denied this request after stating, "No, I am not going to sign/approve a bed move for you after writing me up." PSUF ¶ 28. Plaintiff reported this incident

3

1   to other correctional staff members.  Id. ¶ 29. He was eventually moved by someone other than

2   defendant to a housing unit that plaintiff did not want. Id. ¶ 30.

3        Defendant denies having made the aforementioned statement. Def.'s Decl. ¶ 4. He claims

4   he exercised his discretion in denying plaintiff's request to have another inmate moved into his

5   cell because of issues with that other inmate, and he told plaintiff he needed to find a different

6   inmate to move into the building. Id. A staff investigation of the incident revealed no

7   wrongdoing. Id.

8        **D.      The March 19, 2012, Cell Search**

9        On March 19, 2012, defendant searched plaintiff's cell and confiscated a television set

10  that did not belong to plaintiff. PSUF ¶ 49. The remaining facts concerning this incident are in

11  dispute.

12       Plaintiff's version is as follows: When plaintiff asked what the search was for, defendant

13  responded, "I gave you a chance to withdraw your appeal." PSUF ¶ 50. Defendant then searched

14  plaintiff's cell, destroyed his dentures, and confiscated a television set. Id. When defendant

15  finished the search, he said, "Maybe next time you will think twice about filing a 602 [inmate

16  grievance]." Id. ¶ 51; Decl. of Nakelone Bridges in Supp. of Pl.'s MSJ (ECF No. 28 at 25) ¶ 7.

17       Defendant's version differs. On February 8, 2012, defendant became aware that plaintiff

18  was in possession of a 13" color television. Def.'s Decl. ¶ 5. Since plaintiff, who was assigned to

19  work group "C," was not entitled to possess a television, defendant confiscated it and stored it in

20  the second tier storage area. Id. Following his return from vacation on March 19, 2012, defendant

21  noted that plaintiff's television was no longer in the storage area, so he searched plaintiff's cell to

22  locate the missing property. Id. He did not locate the television, but he did find a second

23  television that didn't belong to plaintiff. Id. This television was ultimately returned after

24  defendant learned it was a loaner television belonging to plaintiff's cellmate. Id. Defendant denies

25  touching plaintiff's dentures and saying that plaintiff "should think twice about filing a 602." Id.

26       On March 19, 2012, plaintiff submitted an appeal regarding the television and the

27  destruction of his dentures. PSUF ¶ 32. Plaintiff's appeal was partially granted at the first level of

28  review. Id. ¶ 39. Plaintiff's request for replacement of dentures was denied, but his request not to

4

1    be subjected to retaliation or harassment for filing the appeal was granted. Id. Plaintiff appealed

2    this decision. Plaintiff's appeal was then partially granted at the second level of review. Id. ¶ 44.

3    Again, plaintiff's request for denture replacement was denied, but his request not to be subjected

4    to harassment was partially granted. Id. Plaintiff's appeal was then denied at the third and final

5    level of review. Def.'s Decl. Ex. B.

6    **IV.    Legal Standards**

7        Summary judgment is appropriate when the moving party "shows that there is no genuine

8    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

9    Civ. P. 56(a).

10       Under summary judgment practice, "[t]he moving party initially bears the burden of

11   proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d

12   376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving

13   party may accomplish this by "citing to particular parts of materials in the record, including

14   depositions, documents, electronically stored information, affidavits or declarations, stipulations

15   (including those made for purposes of the motion only), admission, interrogatory answers, or

16   other materials" or by showing that such materials "do not establish the absence or presence of a

17   genuine dispute, or that the adverse party cannot produce admissible evidence to support the

18   fact." Fed. R. Civ. P. 56(c)(1).  "Where the non-moving party bears the burden of proof at trial,

19   the moving party need only prove that there is an absence of evidence to support the non-moving

20   party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R.

21   Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time for

22   discovery and upon motion, against a party who fails to make a showing sufficient to establish the

23   existence of an element essential to that party's case, and on which that party will bear the burden

24   of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an

25   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

26   Id. at 323.  Summary judgment should be granted, "so long as whatever is before the district court

27   demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

28       If the moving party meets its initial responsibility, the burden then shifts to the opposing

5

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**V.     Discussion**

The Ninth Circuit has defined the parameters of a First Amendment retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.2005) (footnote and citations omitted).

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing Rhodes, 408 F.3d at 568 n.11). Moreover, "the mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Id. at 1270. Nor need the threat be explicit or specific. Id. A prisoner must also show some causal connection between the action taken by the state actor and the prisoner's protected conduct. That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." Id. at 1271 (internal quotation marks and citation omitted).

This action is clearly unsuitable for summary judgment since each of the incidents at issue is replete with material factual disputes. As to the shower denials, plaintiff has submitted evidence that defendant was aware of the September 2, 2011, grievance on the date that it was filed; that defendant sought to have plaintiff withdraw it; and that defendant denied plaintiff multiple opportunities to shower after making statements suggesting a retaliatory motive. Defendant disputes each of these facts. He claims he did not learn of the grievance until October 26, 2011; he denies making any of the statements attributed to him; and he claims there are legitimate reasons for the shower denials. Because these factual disputes cannot be resolved on a summary judgment motion, plaintiff's motion must be denied.

Similarly, plaintiff's motion related to the September 19, 2011, denial of plaintiff's request for a convenience bed move must be denied. Plaintiff submits evidence that defendant denied the bed move in retaliation for the September 2, 2011, grievance. Defendant again denies

having had knowledge of the grievance until late-October 2011, states his reasons for the denial were legitimate, and claims that he did not make any of the statements attributed to him.

Finally, plaintiff is not entitled to summary judgment regarding the March 19, 2012, cell search. Though plaintiff submits evidence that defendant made a statement suggesting that the cell search and the breaking of plaintiff's dentures were in retaliation for the filing of a grievance, defendant denies breaking the dentures, making the statements, and otherwise retaliating against plaintiff.

In light of these factual disputes, plaintiff's motion for summary judgment must be denied in its entirety.

**VI.   Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that plaintiff's motion to bifurcate defendant's opposition (ECF No. 32) is denied, and

IT IS HEREBY RECOMMENDED that plaintiff's motion for summary judgment (ECF No. 28) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any reply to the objections shall be served and filed within fourteen days after service of the objections.

////

////

////

////

////

////

////

8

1    Failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>,

3  951 F.2d 1153 (9th Cir. 1991).

4  Dated:  January 3, 2017

5

6                                                            _____

7                                                            DEBORAH BARNES
                                                             UNITED STATES MAGISTRATE JUDGE
8

9  /DLB7;
   DB/Inbox/Substantive/bart1500.msj
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9